UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 14-5053
(C.A. No. 12-1177)

EDNA DOAK,                                                                                  Appellant,

    v.

JEH JOHNSON, Secretary,
U.S. Department of Homeland Security,                             Appellee.

### APPELLEE'S MOTION FOR SUMMARY AFFIRMANCE

Appellee, Jeh Johnson, Secretary, U.S. Department of Homeland Security, respectfully moves for summary affirmance of the Memorandum Opinion and Order issued on February 10, 2014, by the Honorable Rudolph Contreras (Exhibit A). The District Court granted Appellee's motion to dismiss certain unexhausted claims and for summary judgment as to all claims of disability discrimination and reprisal that Appellant asserted under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* against the U.S. Coast Guard ("Coast Guard" or "Agency"). Summary disposition is appropriate in this case because the "merits of this appeal are so clear as to make summary affirmance proper." *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980). Full briefing and oral argument on the issues presented to the Court would not materially advance the disposition of this appeal. *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (*per curiam*).

## BACKGROUND AND PROCEDURAL HISTORY

Appellant, Edna Doak, worked as a GS-13 Management Program Analyst in the Office of Acquisition Resources Management within the Acquisition Directorate of the Coast Guard from November 2007 until October 2010. R. 14 ¶ 1. Her first-line supervisor was Greg Cohen, Chief of Business Management and Metrics Group; her second-line supervisor was Rory Souther, Chief of Acquisition Resources Management, but she had limited interactions with him. *Id.* ¶¶ 2-3. Doak initially worked in the Air Program, but she clashed with its team leader and requested a transfer, and Cohen readily approved her transfer to the Surface Program. *Id.* ¶¶ 4-5. Doak's responsibilities included monitoring the budget, preparing obligation plans and procurement requests, working with program managers, and attending frequent meetings with program managers and business manager team leads. *Id.* ¶¶ 6, 43.

### I. DOAK'S ABSENCES AND IRREGULAR ATTENDANCE ISSUES

In August 2009, Doak requested, and the Agency approved, leave under the Family and Medical Leave Act ("FMLA") because of medical problems resulting from a car accident. *Id.* ¶ 7. Around December 2009, Doak returned to an eight-hour day due to her inability to maintain a schedule under which she worked eight nine-hour days and one eight-hour day with one day off. *Id.* ¶ 8. Her 8:15 AM start time was the latest of the 20 staff members in Cohen's group. *Id.* ¶ 9.

## A.    Efforts to Address Attendance Issues With Progressive Discipline

On January 19, 2010, Cohen issued an "Employment Status" memorandum requesting that Doak return to a full-time duty status because she had nearly exhausted her FMLA leave and her absences were having a negative impact on her projects and her timely completion of required certifications and training. *Id.* ¶ 10. As of January 19, Doak had used 440.30 hours (about 11.5 weeks) of FMLA, and had a negative balance of sick (-233 hours) and annual (-35.15 hours) leave. *Id.* ¶ 11. Cohen advised that Doak would be required to seek leave without pay ("LWOP") and provide support for future absences, and reminded her of the need to request leave properly. *Id.* ¶ 12.

Despite the memorandum, Doak was absent without leave ("AWOL") for several hours less than one week later. *Id.* ¶ 13. Doak acknowledged that her sick leave deficit was a large negative balance, and that her supervisor likely was frustrated by her absences and negative leave balances. *Id.* ¶ 16. Cohen issued another memorandum on February 22, 2010, reprimanding Doak for being AWOL on January 25-26, 2010, and for failing to comply with leave request procedures. *Id.* ¶ 17. Following a discussion with the union, the Agency agreed to hold the letter of reprimand in abeyance so Doak could provide medical documentation to support her absences, AWOL, and pending leave requests. *Id.* ¶ 18. Doak submitted three medical letters directly to the Agency's medical officers. *Id.* ¶ 19.

3

Based on the medical officers' report that the documentation did not support Doak's absences or address whether her conditions required reasonable accommodations, Cohen issued a request for additional medical documentation. *Id.* ¶ 20.

### B.    Doak Seeks Workplace Accommodations in April 2010

In April 2010, Doak submitted for the first time a request for workplace accommodations, which Human Resources forwarded to physicians in the Coast Guard's Division of Operational Medicine and Medical Readiness (referred to as "medical review officers") for a medical opinion as to whether the requested accommodations were medically justified. *Id.* ¶¶ 21-22. Doak's physician, Dr. Elizabeth Berbano, indicated that Doak suffered from major depressive disorder, migraines, hypothyroidism, and obstructive sleep apnea, and recommended that Doak be granted the following: (1) telecommuting; (2) full-spectrum lighting; (3) anti-glare computer screen; (4) work in area not subject to cold air currents; (5) work schedule of 11 AM to 7 PM "because of the difficulty arising in the morning"; and (6) make-up weekend work hours. *Id.* ¶ 24. Dr. Berbano's recommendations of an 11 AM to 7 PM schedule and as-needed weekend work hours were based on Doak's suggestions. *Id.* ¶ 28. Dr. Berbano noted that Doak was on medication that made her drowsy, and explained that a migraine could incapacitate Doak for an indeterminate number of hours. *Id.* ¶¶ 25-26, 29.

4

Upon review of Dr. Berbano's letter and consultation with the Department of Labor's Job Accommodation Network, Dr. Erica Schwartz, a board certified occupational medicine physician in the Division of Operational Medicine, recommended the following accommodations: (1) addition of fluorescent light filters, a change in lighting, or a move to a private area to allow for personal adjustment to lighting; (2) an anti-glare filter for the computer monitor; (3) use of sunglasses or anti-glare glasses; (4) noise-canceling headsets; and (5) a dark, private area for use when medically necessary. *Id.* ¶¶ 30-31. Dr. Schwartz found the requests for telework, the 11 AM to 7 PM schedule, and weekend work hours to be medically unsupported. *Id.* ¶ 32.

Because of Doak's privacy concerns, Cohen did not have any of her supporting medical documentation at the time he considered her requests for accommodation. *Id.* ¶¶ 33-34. Cohen relied on guidance from the medical review officers and Human Resources, including pertinent Agency policies designating working hours as "between 0600 and 1800 Monday through Friday" and requiring that all employees be present or in a leave status during the core hours of 9:30-10:30 AM and 1:30-2:30 PM. *Id.* ¶¶ 35-37. In a May 6, 2010, response, Cohen provided all of the accommodations recommended by the medical review officers because "[t]he goal was always to get Edna back to work." *Id.* ¶¶ 40-42. As Cohen explained, however, the 11 AM arrival time was not feasible because

5

Doak's position required daily and frequent interaction with project staff, other business managers, resource staff, and numerous agencies, and such a late arrival would create hardship for the project and resource office. *Id.* ¶ 43.

On May 21, 2010, Doak responded with a revised request for a 10 AM arrival, and promised to work toward a 9 AM arrival. *Id.* ¶ 44. On June 1, 2010, Cohen instead offered Doak a 9 AM start time, but Doak refused. *Id.* ¶¶ 45-46.

### C.  Doak's Attendance Issues Persist

On May 24, 2010, Cohen issued Doak a Letter of Reprimand based on 30:75 hours of AWOL, including 23:30 hours of AWOL the week of May 10, 2010. *Id.* ¶ 48. As of May 24, Doak's leave balances reflected -137:45 hours of annual leave, -238 hours of sick leave, and 134:15 hours of LWOP, all of which she admitted would be "concerning" to an employer. *Id.* ¶ 49. Also around this time, Doak's managers learned through a timecard audit of her potential misuse of leave when she attended a holiday party in another Coast Guard building on December 18, 2009, after receiving approval for nine hours of sick leave that day. *Id.* ¶ 51.

### D.  Revised Request for Accommodation in July 2010

Three months after her April 2010 request, Doak submitted another request for accommodation from Dr. Berbano entitled "Clarification of Medical Letter dated 16 Apr 2010." *Id.* ¶ 52. In it, Dr. Berbano noted that when Doak experienced the onset of a migraine, "she is incapacitated due to the pain and

6

cannot concentrate on the tasks at hand, whether at her job or at home." *Id.* ¶ 53. Dr. Berbano also explained that Doak's migraine medication caused prolonged drowsiness, and that she was working with Doak to adjust the timing of when she took the medication. *Id.* ¶ 54. Dr. Berbano recommended an adjusted start time of 9:30 AM or telecommuting, again based on Doak's suggestion. *Id.* ¶¶ 55-56.

The medical review officers opined that Dr. Berbano's letter did not provide appropriate medical justification to support an "arbitrary" start time of 9:30 AM, noting in particular the description of Doak's medical episodes as unpredictable and incapable of being stabilized. *Id.* ¶¶ 57-58. The medical review officers did not know which supervisor ultimately made the decision regarding Doak's accommodation requests, nor did they ever have any discussions with any supervisor regarding Doak's requests. *Id.* ¶ 59.

### E.    Doak Agrees to 9 AM Start Time, But Attendance Issues Persist

On July 23, 2010, at a meeting with her supervisors, Doak agreed to a 9 AM arrival time. *Id.* ¶ 60. Despite agreeing to the 9 AM start time, Doak was still unable to arrive at work on time. *Id.* ¶ 61. As a result of her frequent absences and late arrivals, Doak's colleagues had to perform her duties. *Id.* ¶ 62. In addition, Doak's position required that she complete BCF 106 (Fundamentals of Cost Analysis) and appropriations law training, but she failed to finish either course. *Id.* ¶ 63.

## II.   AGENCY PROPOSES DOAK'S REMOVAL, BUT AGREES TO PERMIT RETIREMENT IN LIEU OF REMOVAL

On August 9, 2010, Cohen issued a notice proposing to remove Doak due to her medical inability to perform the essential duties of her position and her AWOL hours. *Id.* ¶ 64. Since the end of January, Doak had been absent from duty for at least 52 percent of her work hours, had exhausted all of her sick and annual leave, and had incurred over 173.45 hours of LWOP. *Id.* ¶ 64. In addition, Doak failed to report for duty or submit documentation to support her absences on 45 dates between February 19, 2010, and August 4, 2010. R. 14-24. These unscheduled and unexplained absences persisted even after Doak agreed to change her start time to 9 AM. *See id.*

In response, the union claimed that the Agency relied on "faulty and very bad medical advice" and argued that Doak should have been on LWOP in each instance of AWOL. R. 14 ¶ 67; R. 14-25. Doak also submitted an oral response. R. 14 ¶ 68. After careful consideration of the evidence, Souther determined on September 30, 2010, that Doak's removal was warranted. *Id.* Although Doak's unscheduled absences decreased briefly after she received the notice of proposed removal, they "continued and increased significantly since 10 September 2010." *Id.* ¶ 69. Even treating Doak's AWOL hours as LWOP, Souther found that her absences "remain 52 percent of the work time between 31 January 2010 and 17 July 2010, and 45 percent of the work time through 11 September 2010." *Id.* ¶ 72.

8

As a consequence, Doak had exhausted 492.75 hours of FMLA, including the maximum allowable annual and sick leave and advanced annual and sick leave, and incurred 209 hours of LWOP. *Id.* ¶ 70. Doak generally protested the accuracy of these numbers, but did not perform her own leave audit. *Id.* ¶ 71.

On October 6, 2010, Doak contacted an Equal Employment Opportunity ("EEO") officer to file an informal complaint challenging the September 30, 2010, removal decision. *Id.* ¶ 73. On February 22, 2011, Doak filed a formal EEO complaint. *Id.* ¶ 74. The Agency then entered into a settlement agreement permitting Doak to retire in lieu of termination. *Id.* ¶ 75. Although Doak subsequently revoked the agreement, the Agency did not undo her retirement, so Doak has been receiving retirement benefits since December 2010. *Id.* ¶ 76.

Thereafter, Doak filed this suit under the Rehabilitation Act alleging that the Agency discriminated against her by discharging her because of her disability and by failing to provide her with reasonable accommodations and retaliated against her by terminating her for requesting accommodations. R. 1.

### III.   PROCEDURAL HISTORY

After the parties had a full opportunity for discovery, the District Court resolved all of Doak's claims in favor of Coast Guard on February 10, 2014. R. 19, 20. For the reasons set forth below, the District Court's decision was correct and should be summarily affirmed.

**ARGUMENT**

The District Court's Opinion thoroughly analyzed the evidence for each of Doak's claims of disability discrimination and retaliation. On appeal, Doak may neither raise new arguments nor rely on evidence she failed to proffer below. *See, e.g.*, *Flynn v. Comm'r*, 269 F.3d 1064, 1068-69 (D.C. Cir. 2001) ("Generally, an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances."). This Court's *de novo* review is thus framed by the arguments and evidence presented below. *See* R. 14, 17, 18.

Courts analyze discrimination and retaliation claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); *Kersey v. Washington Metropolitan Area Transit Auth.*, 586 F.3d 13, 17 & n.1 (D.C. Cir. 2009) (applying *McDonnell Douglas* framework to disability discrimination and retaliation claims under the Rehabilitation Act). Once an employer offers a legitimate, non-discriminatory, non-retaliatory reason for its actions, the employee may defeat summary judgment only by establishing that the employer's "proffered reason was not the true reason for the employment decision," and that discrimination or retaliation motivated the employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993); *Aka*, 156 F.3d at 1292-93; *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

## I. THE DISTRICT COURT CORRECTLY GRANTED THE COAST GUARD'S MOTION TO DISMISS DOAK'S FAILURE TO ACCOMMODATE CLAIM AND CERTAIN DISPARATE TREATMENT CLAIMS FOR FAILURE TO EXHAUST.

Doak first contacted an EEO officer on October 6, 2010, to file an informal complaint to challenge the September 30, 2010, removal decision, and subsequently filed a formal complaint on February 22, 2011. *See* R. 14 ¶¶ 73-74; R. 1 ¶¶ 21-23. An employee may file a Rehabilitation Act action in federal court only after exhausting administrative remedies. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011), *aff'd*, No. 12-5016, 2012 WL 3243983 (D.C. Cir. Aug. 7, 2012). The administrative exhaustion requirement mandates that an aggrieved employee seek informal counseling "within 45 days of the allegedly discriminatory act" "in order to try to informally resolve the matter," and to limit any subsequent formal EEO complaint to "only the claims raised in pre-complaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling)." *See* 29 C.F.R. § 1614.105(a)(1) & (b)(1). Failure to exhaust administrative remedies for a Rehabilitation Act claim is a jurisdictional defect. *Spinelli*, 446 F.3d at 162.

Here, Doak's initial October 6, 2010, contact with an EEO counselor occurred more than 45 days after the Coast Guard responded to either of her requests for accommodations: Doak first requested accommodations on April 16, 2010, to which Agency responded on May 6, 2010, and Doak submitted a revised

request on July 16, 2010, to which Agency responded on July 20, 2010. Mem. Op. (R. 20) at 11; R. 14 ¶¶ 40-43, 57. Doak did not contest her failure to timely contact an EEO counselor within 45 days of the Agency's denials of her accommodation requests, nor did she dispute her failure to timely challenge actions occurring before August 22, 2010 (45 days prior to her initial EEO contact on October 6, 2010), including the February 2010 and May 2010 letters of reprimand, the August 9, 2010, Notice of Proposed Removal, and the AWOL charges. *See* Mem. Op. at 11-12 & n.8. Instead, she argued that the Coast Guard waived the failure to exhaust argument by not raising it in the administrative proceeding. *See id.*

As the District Court aptly observed, however, "where the relevant exhaustion inquiry is jurisdictional, as it is under the Rehabilitation Act, courts do not entertain equitable defenses such as waiver." *Id.* at 12-14. *See Spinelli*, 446 F.3d at 162 (explaining that under the Rehabilitation Act, "[s]uch 'jurisdictional exhaustion' . . . may not be excused"); *accord Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) ("Because we hold that the CAA's counseling and mediation requirements are jurisdictional, the district court correctly ruled that it was not empowered to apply the equitable doctrine of vicarious exhaustion to excuse compliance with those requirements."). *See also Mahoney*, 2012 WL 3243983, at *1 (finding district court did not abuse discretion in declining to invoke equitable tolling for unexhausted retaliation claims).

Consequently, the District Court correctly found that it lacked jurisdiction to hear Doak's failure to accommodate claim in Count II and her claims of disability discrimination in Count I based on Agency actions before August 22, 2010, and its dismissal of these unexhausted claims should be summarily affirmed.

## II. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE COAST GUARD ON DOAK'S DISABILITY DISCRIMINATION CLAIMS

Doak claimed that the Coast Guard violated the Rehabilitation Act when it took various employment actions against her and denied certain accommodation requests. As the District Court correctly concluded, even if it had jurisdiction to hear Doak's unexhausted claims in addition to her timely challenge to the September 30, 2010, removal decision, Doak failed to adduce any evidence showing that the Agency's challenged actions were motivated by disability animus or that the Agency failed to reasonably accommodate her. Mem. Op. at 14-29.

### A. Doak Failed to Identify Any Evidence from Which A Reasonable Jury Could Infer Disability Discrimination

Doak alleged that the August 9, 2010, Notice of Proposed Removal, the September 30, 2010, decision to terminate her, the February 2010 and May 2010 letters of reprimand, and the AWOL charges were motivated by disability discrimination. *See id.* at 15-19. The Agency argued that Doak did not suffer a materially adverse employment action because she was never terminated, and was instead permitted to retire, but the District Court declined to decide whether

13

Doak's retirement amounted to a constructive discharge. *See id.* at 16-17 & n.16. Assuming without deciding that Doak suffered an adverse employment action, the District Court found that Doak failed to produce "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated" against her. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Both Cohen's proposal to remove Doak and Souther's decision that her termination was warranted were based on well-documented evidence of Doak's perpetual attendance problems and flouting of proper leave procedures. Mem. Op. at 17-18. As the August 9, 2010, Notice of Proposed Removal reflected, there were over 40 workdays in 2010 in which Doak was in AWOL status. *See id.* Doak's supervisors further explained that Doak's frequent, unscheduled absences—which amounted to about 50 percent of her work hours in 2010—negatively affected her projects, created hardship for her colleagues, and caused her to miss mandatory training and certifications. *See id.* at 18.

Doak failed to proffer any evidence that contravened the Coast Guard's attendance- and AWOL-based reasons for its decisions; indeed, Doak did not dispute that she had attendance problems. *See id.* Because Doak failed to identify any evidence from which a reasonable jury could find that the Coast Guard's reasons were pretextual, the District Court correctly granted summary judgment to

14

the Agency on Doak's disability discrimination claim and its decision should be summarily affirmed. *See Kersey*, 586 F.3d at 19 (upholding grant of summary judgment where employee failed to present evidentiary support showing that employer's reasons were pretext for disability discrimination).

### B. Doak Failed to Show that Agency Failed to Provide Reasonable Accommodations

The Court need not reach Doak's failure to accommodate claim if it finds that the District Court lacked jurisdiction to hear it. But even if jurisdiction existed, the claim still failed because the record shows that the Agency provided Doak with reasonable accommodations.

To establish a *prima facie* case of discrimination based on the failure to accommodate, a plaintiff must proffer evidence from which a reasonable fact finder could find that (1) she had a qualifying disability; (2) the employer had notice of the disability; (3) with reasonable accommodation she could perform the essential functions of the position, and (4) she requested an accommodation but the employer denied her request. *Barth v. Gelb*, 2 F.3d 1180, 1186-87 (D.C. Cir. 1993); *see Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). The employer's motivation for refusing the accommodation plays no part in the analysis, and therefore reasonable accommodation claims are "not subject to analysis under *McDonnell Douglas*." *Aka*, 156 F.3d at 1288. An individual with a disability is "qualified" if she can perform the essential functions of her position

with reasonable accommodation. *See Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994). An accommodation is "reasonable" if it allows the employee to fulfill all essential functions of her job without imposing an undue hardship on the employer. *See* 29 C.F.R. § 1614.203(c)(1); *Carr*, 23 F.3d at 529.

Here, Cohen promptly implemented all of the accommodations that were recommended by the Coast Guard's medical review officers, and only denied the request for adjusted work hours (with a start time of 11 AM at the outset, later revised to 9:30 AM, and ultimately set as 9 AM with Doak's consent) that the medical review officers found to be medically unsupported. Mem. Op. at 20-21. As the District Court correctly observed, the Agency was obligated to make reasonable accommodations, not to implement every accommodation requested by Doak. *See Aka*, 156 F.3d at 1305 (noting that "'[a]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation'") (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)).

Doak took issue with the Agency's denial of her requests for a schedule of 11 AM to 7 PM, telework, and optional weekend hours to make up any time lost during the week. Mem. Op. at 21. In effect, as the District Court rightly concluded, Doak wished to have a "work whenever you want schedule" that was unreasonable as a matter of law. *See id.* at 24-29. To begin, although Doak made

16

the bare assertion that her AWOL hours were incorrect, she admittedly did not perform an independent audit of her leave records and otherwise failed to identify any inaccuracy in the Agency's records. *See id.* at 25 n.19. Moreover, despite her request for a specific schedule, the record was also undisputed that her work attendance in 2010 was unpredictable, resulting in absences for entire days or inconsistent arrival times that on occasion ran as late as 2 in the afternoon. *See id.* at 25. *See Carr*, 23 F.3d 530 (upholding award of summary judgment to employer who denied request for a flexible arrival time due to a daily 4 PM deadline that the employer would not be able to meet if the employee could not reliably arrive at 8 AM each day and work a full eight-hour shift).

Moreover, the record indisputably showed that Doak was required to interact regularly and hold in-person meetings with project and resources staff, making telework or an adjusted work schedule that had her arriving substantially later than her colleagues impracticable. Mem. Op. at 28. *See Carr*, 23 F.3d at 529 (explaining that "coming to work regularly" was an essential function of the job). Moreover, even if Doak's physical presence was not always essential, the District Court correctly concluded that Doak would still not be able to telework effectively because the onset of a migraine would incapacitate her for an indeterminate period of time and preclude her from working, irrespective of whether she was at home or in the office. Mem. Op. at 29. *See Carr*, 23 F.3d at 531 (explaining that "to

17

require an employer to accept an open-ended 'work when able' schedule for a time-sensitive job would stretch 'reasonable accommodation' to absurd proportions and imperil the effectiveness of the employer's public enterprise").

Thus, as the District Court correctly concluded, the Coast Guard provided all of the reasonable workplace accommodations that were requested and denied only the requests for an open-ended "work when able" schedule because they were unreasonable. Its decision was clearly correct and should be summarily affirmed.

### III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE COAST GUARD ON DOAK'S RETALIATION CLAIM

Finally, Doak contended that the Agency terminated her employment on September 30, 2010 in retaliation for requesting accommodations on April 16, 2010, and July 16, 2010. To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) a reasonable employee would have found the challenged action so materially adverse that she would have been dissuaded from making or supporting a charge of discrimination; and (3) a causal link connects the two. *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009); *Rochon v. Gonzales*, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006).

Here, Doak's supervisors decided that her termination was warranted because of her persistent absences, her failure to comply with leave procedures (despite repeated attempts to counsel her to do so), and the hardship that her

18

attendance issues created for her team. Mem. Op. at 32. As with her disability discrimination claim, Doak failed to identify any evidence that would permit a reasonable jury to infer that the Agency's articulated reason was pretext for unlawful retaliation. *See Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (requiring "positive evidence beyond mere proximity to defeat the presumption that the proffered explanations are genuine").

Consequently, the District Court's entry of summary judgment in favor of the Coast Guard on Doak's retaliation claim was clearly correct and should be summarily affirmed.

## CONCLUSION

The briefing in the District Court on the Coast Guard's motion for summary judgment was thorough, and Doak presented nothing to suggest the possibility of any substantial questions of law or genuine dispute of material fact. Because the law is so clear and there is nothing to be gained by full briefing, the Coast Guard respectfully requests summary affirmance of the District Court's judgment.

> RONALD C. MACHEN JR.
> United States Attorney
>
> R. CRAIG LAWRENCE
> Assistant United States Attorney
>
> /s/ *Michelle Lo*
> MICHELLE LO
> Assistant United States Attorney

19

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2014, the foregoing **Appellee's Motion for Summary Affirmance** has been served by this Court's Electronic Case Filing System.

*/s/ Michelle Lo*
MICHELLE LO
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541